UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANE H. REYNOLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-00441-SEB-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Jane H. Reynolds is not disabled.

## Introduction

Ms. Reynolds applied in March 2011 for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since October 1, 2010. Acting for the Commissioner of the Social Security Administration following a hearing held April 12, 2013, administrative law judge Belinda J. Brown issued a decision on June 12, 2013, finding that Ms. Reynolds is not disabled. The Appeals Council denied review of the ALJ's decision on January 23, 2014, rendering the ALJ's decision for the Commissioner final. Ms.

Reynolds timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Reynolds contends the Commissioner's decision must be reversed and remanded because the ALJ (1) did not discuss her receipt of Medicaid benefits, (2) erroneously evaluated a statement of Ms. Reynolds's limitations provided by a close friend, (3) did not determine all of the physical and mental demands actually performed by Ms. Reynolds in her past relevant work, (4) did not state the number of jobs available to Ms. Reynolds in the positions she found Ms. Reynolds could work, and (5) did not properly evaluate medical opinions in the record.

As explained below, the court finds that none of Ms. Reynolds's arguments provides a persuasive basis for reversing and remanding the Commissioner's decision.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Ms. Reynolds is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA")

has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the

evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I. **The ALJ's Sequential Findings**

Ms. Reynolds was born in August 1955 and was 55 years old as of the alleged onset of her disability in October 2010. She was 57 years old at the time of the ALJ's decision. She is college-educated and has worked in a number of semi-skilled, skilled, and highly skilled positions that qualify as past relevant work.

At step one, the ALJ found that Ms. Reynolds had not engaged in substantial gainful activity since her alleged onset date. At the time of the hearing, Ms. Reynolds was working part-time in a small office setting. She testified she was allowed, generally, the flexibility to work on days and for those hours she felt she could manage to do so. At step two, the ALJ identified degenerative disc disease as Ms. Reynolds's sole severe impairment. She concluded that Ms. Reynolds's depression, when measured against the B criteria of the mental health listings, was not a severe impairment. She found Ms. Reynolds had only mild limitations in daily living activities, in social functioning, and in concentration, persistence, or pace, and had not experienced episodes of decompensation of extended duration. Ms. Reynolds does not challenge the findings at steps one through three.

The ALJ next determined Ms. Reynolds's residual functional capacity, i.e., her maximum work capacity despite her impairments and their effect on her functioning. She determined Ms. Reynolds is capable of performing jobs

accommodating the following limitations: (a) lifting or carrying ten pounds frequently and 20 pounds occasionally, (b) sitting for six hours and standing and/or walking for four hours, (c) occasionally performing reaching maneuvers, and (d) occasionally kneeling, crouching, and crawling. The ALJ also precluded the climbing of ladders or scaffolds. (R. 14).

The vocational expert testified that with these limitations, certain jobs identified as past relevant work, consistent with the Dictionary Occupational Titles, could be performed. (R. 56-57). The ALJ concluded that the demands of Ms. Reynolds's past work "as actually and generally performed" in positions as a billing control clerk (DOT #214.387-010), census taker/statistical clerk (DOT #216.382-062), paralegal (DOT #119.267-026), and contract administrator (DOT #162.117-014) are consistent with the RFC. (R. 18). The ALJ found at step four that Ms. Reynolds is not disabled. She did not evaluate disability at step five. (*Id.*)

## II.   Ms. Reynolds's Assertions of Error

As noted before, Ms. Reynolds argues that the ALJ committed numerous errors in evaluating her ability to work. Four of her contentions do not require extended discussion of the evidence, and the court will address those first. They concern the absence of a discussion of Medicaid benefits, absence of a discussion of jobs numbers, asserted insufficient discussion of the demands of Ms. Reynolds's past relevant work, and an asserted insufficient evaluation of a statement provided by one of Ms. Reynolds's friends. The court will then address Ms. Reynolds's argument

that the RFC is flawed because it does not represent the opinion of any particular medical expert.

### A. Receipt of Medicaid

Ms. Reynolds argues the ALJ erred because she "completely ignored" Ms. Reynolds's testimony that she receives Indiana Medicaid benefits. Her brief states that because she receives Medicaid assistance, she "thus has been declared disabled by the medical review panel of the State of Indiana." (Dkt. 16 at p. 14). The problem with this argument is that there is no evidence that Ms. Reynolds was found disabled for purposes of Indiana Medicaid benefits. The ALJ did not err in failing to address a disability determination under Indiana's Medicaid program when there is no evidence that such a determination was ever made.

### B. Failure to Discuss Numbers of Jobs Available in Region

In reliance on Social Security Rulings 83-14 and 85-15, Ms. Reynolds argues the ALJ was required to make a finding of the "incidence" of available jobs consistent with her past relevant work in the region in which Ms. Reynolds resides or in several regions of the country. (Dkt. 16 at p. 8). The requirements of these Rulings relate to step five of the sequential analysis. Step five is germane only if, at step four, there is a determination that the claimant cannot perform her past relevant work. *E.g.,* SSR 85-15 (If a person's medical impairment "prevents the person from doing past relevant work, it must be determined whether the person can do other work.") Because Ms. Reynolds was found not disabled at step four based on her ability to perform her past relevant work, the ALJ was not required to

7

reach step five and determine whether Ms. Reynolds is capable of doing other work available in the national economy. Ms. Reynolds's assertion of error based on step five requirements is without merit.

### C. Past Relevant Work As Actually Performed

Ms. Reynolds complains that although the ALJ found she could perform her past relevant work as actually performed and as generally performed, she did not fully investigate the demands of the past relevant work. She points out that the vocational expert testified that at least one of her past jobs was performed differently from its description in the Dictionary of Occupational Titles. (Dkt. 22 at p. 2). Any error here is harmless because it is not necessary for Ms. Reynolds to be able to perform her past relevant work in the manner she had performed it *and* in the manner it is generally performed in the national economy. If she can do either, then she is not disabled at step four. 20 C.F.R. 404.1560(b)(2); Social Security Ruling 82-61; *Getch v. Astrue,* 539 F.3d 473, 482 (7th Cir. 2008) (even if the functional demands of the claimant's former job are greater than her capability, if she can perform the demands of that job as it is generally performed, she is not disabled).

As explained in SSR 82-61, titled "Past Relevant Work—The Particular Job or the Occupation as Generally Performed," (1) if a claimant "can perform the functional demands and job duties" of a job as generally required in the economy, he or she is not disabled and (2) the descriptions in the Dictionary of Occupational Titles "can be relied upon . . . to define the job as it is *usually* performed in the

8

national economy" (emphasis in original). (See https://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR82-61-di-02.html (last visited August 3, 2015).

Ms. Reynolds does not contest the VE's testimony that the functional capacity posed in the ALJ's hypothetical to the VE (which matches the RFC adopted by the ALJ in her decision) is consistent with the requirements of the jobs the VE identified by their DOT numbers. The court understands that Ms. Reynolds does argue that the RFC itself is flawed and that argument will be addressed *infra*. The court finds here that, assuming the RFC is supported by substantial evidence, it was not error for the ALJ to make a step four decision based on the VE's testimony that the RFC fits Ms. Reynolds's past relevant work as it is *generally* performed per the DOT descriptions, regardless whether the RFC fits the work as Ms. Reynolds had actually performed it.

### D. Evaluation of Friend's Statement

Ms. Reynolds's friend completed an SSA form documenting her observations of Ms. Reynolds's daily activities and life style and the limitations of her impairments. The friend's statement is dated December 12, 2011, *before* Ms. Reynolds had surgery on her lumbar spine in January 2012. The ALJ determined that, based on the evidence of Ms. Reynolds's improvement after surgery, the friend's description of limitations pre-surgery did not alter her conclusions about Ms. Reynolds's ability to work. Discounting the friend's statement because it

9

preceded surgery the ALJ determined was efficacious is rational. There is no error here requiring remand.

### III. The ALJ's evaluation of the evidence in making an RFC determination is reasoned and supported.

The court now turns to the final assertion of error. Ms. Reynolds argues that the ALJ's RFC determination is not supported by substantial evidence because it does not match any of the medical opinions in the record and thus the ALJ inappropriately "came to her own lay conclusion" in deciding the RFC. The court rejects Ms. Reynolds's argument.

In reaching her decision about Ms. Reynolds's RFC, the ALJ evaluated each of the opinions by medical sources contained in the record, evaluated the medical records and other evidence, and explained the bases for her decision. As provided by Social Security Administration regulations, opinions from medical sources about a claimant's residual functional capacity must be considered, but the final responsibility for deciding the RFC is the Commissioner's (or, the ALJ's in this case because her decision represents the Commissioner's final decision). 20 C.F.R. § 404.1527(d)(2).

The ALJ discussed that Ms. Reynolds had severe degenerative disc disease. Ms. Reynolds said her lumbar back problems had, at times, caused her "traffic stopping" pain and severely limited her functioning. Ms. Reynolds was evaluated in November 2010 for persistent back pain. An MRI of the lumbar spine was done in December 2010. (R. 15). To treat her back impairment and pain, she received steroid injections and participated in physical therapy. (*Id.*) The pain became

10

progressively worse and she was finally referred to Dr. Paul Kraemer, an orthopedic surgeon, in November 2011. Dr. Kraemer recommended surgery based on his evaluation of Ms. Reynolds's symptoms (including progressively worse pain with some radicular symptoms), her December 2010 MRI, and her previous treatment with injections and physical therapy. He also ordered a second MRI, which was done in late December 2011. After the second MRI, Dr. Kraemer recommended the surgery to take place immediately, which Ms. Reynolds underwent in early January 2012. Dr. Kraemer performed an L3 through L5 transforaminal lumbar interbody fusion. (*Id.*)

Within two weeks of surgery, Ms. Reynolds's radiating leg pain was nearly completely gone and her back pain was beginning to resolve. As early as March 2012, Ms. Reynolds reported she was now walking without pain. By March or April 2012, she no longer took narcotic medication and has continued to use ibuprofen as needed for pain. Ms. Reynolds's last visit with Dr. Kraemer was on September 12, 2012, and she reported she was walking as much as she wanted and had even tried some running in the past month without issue. (R. 15). Because Ms. Reynolds was doing so well, no follow-up visit was scheduled. (R. 16).

One month after her visit with Dr. Kraemer, Ms. Reynolds had a consultative physical examination as part of the adjudication of her disability application. She was seen by Dr. Thomas Trainer on October 15, 2012. Ms. Reynolds told Dr. Trainer that she felt much better after her surgery but "in the last few months," she had had increasing pain in her low back on the right. (R. 346). She reported having

11

weak feelings in her legs when standing up after sitting for 30 minutes. She reported being careful in how she turns and twists. In his examination, Dr. Trainer measured Ms. Reynolds's forward flexion of the lumbar spine at 50 degrees before pain, extension of the lumbar spine at 5 degrees before pain, and lateral bending left and right at about 20 degrees before pain. He also made other range-of-motion and strength measurements. Ms. Reynolds told Dr. Trainer about her part time job, working about 15-20 hours per week, and that she has trouble sleeping because of a need to toss and turn in response to discomfort in her back and neck. Dr. Trainer also noted he had not seen any actual x-rays for Ms. Reynolds. (R. 346).

Based on these findings, Dr. Trainer stated his impression that Ms. Reynolds "has rather severe degenerative lumbar disc disease and moderate cervical degenerative disc disease" and "some limitations which I believe will be permanent." He stated his belief Ms. Reynolds "can continue office type work with hours being determined by her pain," should not do excessive lifting, and "should avoid repetitious turning, twisting, and flexing extension of her cervical spine and lumbar spine." (R. 347). Dr. Trainer also completed a functional capacity form. He checked boxes indicating Ms. Reynolds (a) should never lift anything over 10 pounds and only occasionally lift anything less than 10 pounds, (b) should stand no more than two hours in a work day, walk no more than one hour, and sit no more than five hours, and (c) had certain postural limitations. These opinions were based on Ms. Reynolds's limited range of motion in her lumbar spine without pain and feelings of pain with increased weight. (R. 349-354).

12

The ALJ did not adopt Dr. Trainer's restrictions. She explained why. She discounted the reliability of Dr. Trainer's restrictions because he admitted he had not seen Ms. Reynolds's x-rays, and Ms. Reynolds had painted a bleaker and inconsistent picture of her pain and limitations to Dr. Trainer as compared to her reports one month before to her treating surgeon, Dr. Kraemer. Ms. Reynolds told Dr. Trainer she had been having increasing pain over the last *few* months. This contrasted with Ms. Reynolds's reports to Dr. Kraemer one month before that she "was doing great," was doing so well she was walking as much as she wants, and had even tried running without any issue. (R. 359). Dr. Kraemer had not even scheduled any follow-up appointment for Ms. Reynolds "given the fact that she is doing so well." (*Id.*) The ALJ contrasted Dr. Trainer's significantly restrictive lifting limitations with the fact that Dr. Kraemer, the treating physician, had not imposed any restrictions in lifting or bending. (R. 363)  The ALJ also noted the range of motion testing depended on effort by Ms. Reynolds and her subjective indications when the movement caused pain, and thus were subject to manipulation by Ms. Reynolds. These reasons for discounting the weight to give Dr. Trainer's restrictions are reasoned. They adequately support the ALJ's conclusion.

The ALJ also discussed why she had not adopted wholesale the opinions of state agency medical consultants regarding Ms. Reynolds's functional capacity. The ALJ found these doctors had overstated Ms. Reynolds's capabilities, and explained that they had not had access to all the medical source statements or the most recent medical records and had not had the opportunity to consider Ms. Reynolds's live

testimony at the hearing. The ALJ had reviewed, and discussed, all of this information in her decision. She did not ignore an entire line of evidence and traced the path of her reasoning. *See Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

The court's standard of review does not permit it to reweigh the evidence. Because the ALJ provided logical reasons to support her weighing of the evidence, including Dr. Kraemer's treatment records, the report of Ms. Reynolds's friend, and the opinions of state agency non-examining consultants and Dr. Trainer, the court finds that substantial evidence supports the ALJ's RFC determination.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Reynolds is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: August 5, 2015

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system